May it please the court, Albert Chow on behalf of the petitioner Hong Li. Your honors, this is an asylum case and in this case the main issue is one of credibility and we believe that in the totality of the circumstances that in this case the petitioner has testified credibly. Essentially the main reasons why the adverse credibility finding was made was because of inconsistencies. In terms of the omissions we cited the case of lie beholder which stands for the proposition that omissions are less probative of credibility than actual contradictions intestinal. And we've also submitted the case of Bandari B.I.N.S. wherein the ninth circuit stated that an I.J. should not substitute his or her own subjective views of what an applicant or her asylum application. And so that is what we have here, is that the board is substituting what they believe should have been in the asylum application and that is not permitted. So counsel, why don't you assume that I may agree with you on some of the inconsistencies. Here's where I have a problem that I'm having a lot of trouble getting over. Your client provided false information on the asylum application that she'd never been arrested or convicted of a crime and that was an untrue state. While your client gave what I think would be considered to be a plausible explanation for that omission, neither the I.J. nor the board are required to accept plausible explanations for inconsistencies or false statement. So even if I agreed with you on everything else as to credibility, we're required to uphold a credibility determination based on even one ground. So how do we get around the false statement on the visa, that your client had never been arrested? Well your honor, in this case when we're talking about you know when we're talking about credibility, you know credibility is not simply just adding up inconsistencies. When you have an inconsistency, we must evaluate what is this what does this say about this person's capacity for truthfulness. And in this case, the petitioner in making what I believe to be you know a reasonable conclusion to what you know was here is that it doesn't state anything about her capacity for truthfulness. She's not deliberately trying to hide the fact that she was arrested. In fact, it doesn't help her case at all. You know if she hit that fact, the case was ultimately... Well I mean it might help her if it were never discovered. But even again, even if I were as the finder of fact to have agreed with you, that's not the test we need to apply. I mean we need to, we have to uphold a credibility determination even if it's based on just one of many list grounds. And we can't reject it unless we are compelled by the evidence to do so. And again, even if I were to agree with you as the trier of fact, I don't see how we're compelled to reject the credibility determination based on a false statement on the asylum application. So I mean your arguments go to the trier of fact, but I don't see how they can convince us. Well your honor, the first thing is that a court may find adverse credibility finding on one inconsistency, but everything is evaluated under the totality of the circumstances. Now again, in this case, the petitioner was specifically, as she testified, she was specifically told by her judge and also her attorney, your criminal record is clean. There is no record whatsoever. And so when we're talking about someone who's a foreigner from another country who knows nothing about the legal system in the United States and she says, well, I have no arrests. I mean, I think that that is something that you would, you have to be compelled to state that this is not something that would go to her overall credibility. Did you? No, I'm sorry. Were you her lawyer at that time? I was. And you were with her when this took place, right? Yes. I'm sorry. I was not the criminal lawyer. I was not the criminal lawyer. Only immigration. Okay. So there was a lawyer with her when she said that she had never been arrested. So she, she had a lawyer with her and yet she said when she did that, she had never been arrested for a crime and she had been. Yes. And what I'm saying is represented by a lawyer at the time, if there's any question in her mind, she had counsel there. Can't, can't the board and the immigration judge make a value decision as to whether or not they believe her. And if they can make that, why don't we give that the credibility we usually do for the board and the IJ? I just think that in this case, it's because ultimately hiding the fact that she was arrested when the case was ultimately dismissed, it doesn't have any bearing on her actual asylum hearing or asylum application. That's not what they're looking for. They're looking for whether or not she is a truthful person. And she did something that was untruthful. Why isn't that sufficient? Because in this case, when a foreigner is told by her judge and also her criminal attorney, your criminal record is clean. You have no record whatsoever. I think it's reasonable. And I think it's compelled that she would think to herself, I don't have any arrests. I don't have any the IJ thought, the immigration judge thought otherwise. So you want us to reverse that finding by the IJ? I do want that finding reversed, your honors. And again, I just, I just think that this is not something that is, this is not information that was deliberately withheld. This is information in which she was told by a judge and also her attorney, your record is clean. So for someone from another country, when she hears that, I don't think there's any reason for her to think that, oh, I have an arrest. I have a conviction. The case was dismissed. Ultimately, she doesn't have any record at all. That's what she heard from her judge and her attorney. And that's why we believe that in this case, you would be compelled to reverse the judge's finding in that case. Mr. Chow, what evidence do you have that she heard that from her, from the judge? I'm sorry, your honor, I didn't hear you very well. What is the evidence that the petitioner cleaned from the judge? She testified to that in her testimony. She stated that. She testified to that, that her judge and her attorney told her her record was clean and DHS counsel confirmed that the case was ultimately dismissed. But, but, again, your honor, I'm sorry, I didn't really hear you. We would have to believe actually what she heard from the judge. Yes, we would have to believe that this is what the judge and her attorney told her. And again, DHS counsel through their own records confirmed that there was an arrest and that the case was ultimately dismissed. Counsel, I don't recall and correct me if I'm wrong, but I don't recall that she testified that the judge said that that meant she had never been arrested. I don't believe she testified that anyone told her that she had never been arrested. No, that was not the testimony. The testimony was that the judge told me that I had no part two of the application as to convictions. But I mean, even people who are acquitted and have no criminal record are still arrested. Yes, your honor. And I agree with that. But what I'm saying is that for someone who has was from a foreign country was no legal training whatsoever. I mean, how many non lawyers know the difference between an arrest and a conviction? And so when someone asked her about, have you ever been arrested? I think she thought, well, my judge told me that I had no record whatsoever. And so she didn't put it in there. But I don't think this is a deliberate attempt to deceive. I see I have 25 seconds left and I will reserve that for a bone. Thank you. All right, well, we'll give you some additional time. Can I ask one question on my own time? I don't. The Real ID Act was a turning point on how we see these cases. And in the circuit, I remember when it came up, we made we talked about it, we changed how we viewed the cases because it was a watershed statute. Why do you cite pre Real ID cases? Well, I've cited some pre Real ID cases only to give context as to how we should evaluate credibility under the Real ID Act. And so I don't I don't understand that at all. We've been very clear on this. And I noticed you have another case coming up tomorrow, which is submitted. You did this in both of the cases. It does not help us if you cite Real ID cases as if it were pre Real ID cases as a matter of law. I think you might want to change how you address that. I understand, Your Honor. Thank you. All right. Thank you. Counsel for the Attorney General. Good morning, Your Honor, or afternoon, depending on where you are. May it please the court. Andrew Nsinga on behalf of the Attorney General. As Judge Bennett pointed out, we're not fact finders sitting here judging the evidence in the first instance. What we are looking to is a standard review and a totality of circumstances. So petitioner has to show to this court is that the record or compel any possible any reasonable fact finder to find that she is a credible witness. But from the very beginning, what we have is a problem of not being honest about her having been actually convicted. Petitioner goes a great lengths to have some sort of legalistic arguments about what being convicted means. But the question is extraordinarily broad. It says, have you ever been have you ever committed a crime? Have you ever charged? Have you been arrested? Have you been sentenced? Have you been convicted? You know, you know, counsel, I certainly understand the standard of review in your for the petitioner, because I've seen in many contexts over the years, people had records expunged, convictions taken off of the record, who were born in this country, educated English as their first language, who find it very confusing when asked to answer questions about what previously happened when judges tell them and they have records indicating that their their their records were were wiped clean. So it strikes me as not in any way an unreasonable proposition that the petitioner honestly believed she was she was correctly answering. So I mean, I think the argument that it's broad, she should have known this. I mean, it obviously convinced the finder of fact, but I mean, it has some logic behind it, the petitioner's argument. Yes, your honor, that is sort of the interesting nature of an adverse credibility determination, whether we're looking at district court judge or a jury or an immigration judges fact finder, there, you have to look at that broader context. And of course, a conviction doesn't stand alone. But it's possible she's simply confused. But when we look at that broader context of petitioners been represented by counsel the whole time, from 2011, when she first entered removal proceedings to 2013, when she was convicted to 2016, when she sat before an immigration court with her lawyers sitting there, saying this is an accurate and truthful application. If there's any questions here, this is in some sense why we have lawyers. So when we look at the totality of the circumstances, both in the broader sense, but also in the sense of this issue alone, the record wouldn't compel a fact finder say, well, yeah, she's just confused. Because anyone can claim to be confused. It's understandable that people can sometimes be confused. That, of course, is part of why we do rely on lawyers. And when you have a lawyer sitting next to you, and you've been represented by lawyers the whole time, then it behooves you to take advantage of that. There's additional notion that it bears a little bit of care when we look at the actual record here. The case was actually dismissed after she swore to the accuracy of the application. She swore the accuracy application of August of 2016. The case was ultimately only dismissed in 2017. Wasn't her testimony that she was told before the asylum application that this was going to happen? Correct, your honor. That was her testimony, right? That was her testimony. I just want to, when we look at the facts sometimes, because the immigration judge has all those facts before us, and we want to be careful. I want to be careful when we present the facts to the court, as a reviewing court, to say she was told she was being dismissed, but in the course of the previous seating, she was actually in the process of actually getting it dismissed. And again, it shows that petitioner's not as naive necessarily as petitioner would like to paint herself. She was looking at the time. I wonder how much, we've just been focusing on one part of a lot of testimony the IJ looked at, and I noticed that in her summary, the statement is, in summary, the court finds that the corroborating evidence was generally not reliable. Corroborating evidence was generally not available. In evaluating respondents' oral and written testimony and other evidence in the record, the court finds respondent is not a credible witness, particularly about her arrest in China. So there's all of this other stuff, and then there's particularly the arrest in China. How do we know what else, or do we just have to assume? How do we know what else she looked at, besides whether or not she'd been arrested before, that was apparently also persuasive to the IJ? And if we can't do anything about that, what's the outcome? Well, Your Honor, we do know, obviously, as you point out, we have been focused, I have been focused on the conviction issue. But we look at an adverse credibility in the totality, and we have additional concerns about the omission, about the treatment in detention. And then we have what is an omission and an inconsistency with her witness's statement about whether her husband was fired or not because of her supposed involvement in religion. And then there's the general concerns about the timing of receiving the visa. So it is sometimes a difficulty when we are looking at totality of the circumstances test. Because we live in a fourth-dimensional world, we have to talk about them one at a time. But we have to consider them of the concerns. Petitioner never claimed to have been denied food during detention, and the conditions of confinement are a relevant concern in these, whether or not something rises to the level of persecution. There is sort of an attempt to backtrack on it, saying, well, when I said they denied me food, it was only the detainees, and then I was received food. But often we're just not left with... Well, you know, counsel, I find that, from my review of the record, unconvincing. I find that she testified that she was denied food, and I think fairly read. It's the inmates. And although receiving a little bit of food on the third day is theoretically inconsistent with never getting any food, I don't really find that compelling. But I am having trouble getting past the criminal issue. On another question, do you agree that if we reached the second issue, that we would be mandated to either reverse or remand based on the Glow case, as cited by Petitioner in the 28J letter, which obviously the BIA didn't have the benefit of when it decided this case? No, Your Honor. Why not? The adverse credibility is independently dispositive. Right, no, I understand. Maybe I asked the wrong question, that if we needed to reach the second issue because we rejected the adverse credibility finding, and my question was that, that we would need to either reverse or remand in light of Glow if we rejected your position on credibility. Thank you, Your Honor, for your clarification. No, we would not need to remand necessarily. I appreciate, again, that the agency did not have the benefit of the second Glow decision. But as the court should have explained in the later unpublished decision of how it viewed Glow, if Petitioner had shown an intent to, on a particular form of her religion, this would be fitting with inside of Glow. But she didn't testify that she had any particular intent to follow any particular denomination. In fact, she specifically asked, do you follow any denomination? She said no. She wasn't entirely sure the name of her church would also potentially reveal something about what she intended to practice. The simple problem is we just don't have any evidence to show that she had an intent to only practice in an underground house church as opposed to the various denominations by the United States or in China. But when we do look at the adverse credibility, I appreciate that we may not always agree completely on, say, the denial of food or the conviction, but we also have concerns about the husband being fired, which is... Although even on the husband being fired, she only made that statement in response to, if I recall correctly, a question from the IJ. And it wasn't that she was putting this in in support of her application. Initially, she simply was trying to, according to her, truthfully answer the IJ's questions about her husband. She wasn't proffering it affirmatively. She was just answering the question about sort of what's happened to your husband. So that's a little bit different, isn't it? It's a little bit different. It's, of course, complicated because it's not merely an inconsistency with her witness's statement. And that, under the statute, is allowed to be considered by the fact finder. Petitioners had submitted an undated letter saying that for six years, they had... The police supposedly had been visiting his work, his daughter's school, and their home. But there's no mention of the fact that he himself is supposedly fired by the school for her colluding with the religion. It creates an inconsistency with her own supposedly corroborative evidence. So when we look at those concerns in light of the conviction, in light of the food concern, in light of the sort of history of receiving the visa, that totality of circumstances doesn't compel any reasonable fact finder to say she is definitively credible. Your time is up, but if you have any closing remarks? No, Your Honor. We simply ask the court to deny the petition, unless you have any further questions. No. Mr. Chau will give you two minutes for rebuttal. Thank you, Your Honors. In response to the question about Glovee Sessions, were she to be found credible? I think this case should be remanded in terms of persecution. And the key to Glovee Sessions is that the court stated that when we're looking at religious persecution is the restraint upon one's practice of religion. And that is exactly what happened here. She had to sign a promise letter saying that she would never return to the home church. And even after she was released, she had to report to the police station every Monday, where the police would threaten her again and say, you cannot return to the home church or we will sentence you. So certainly, if she were to be found credible, this case should be remanded for persecution. And Your Honor, just going back to the issue about the asylum application and the criminal conviction, again, everything is evaluated under totality of the circumstances. And that is why this court is allowed to review what the decision was as to why this person, as to whether or not this inconsistency would support an adverse credibility finding. And that's why we believe that under totality of the circumstances, as Judge Bent stated, when you take into account non-lawyers, and certainly in this case, a foreigner, I think that in this case, when we're talking about what is an arrest, what is a conviction, what does it mean when your criminal record is clean, that this should not be supporting an adverse credibility finding. Thank you. All right. Thank you. The case, we thank counsel for their helpful arguments and the case just argued will be submitted.
judges: Wallace, Bea, Bennett